ED. POLZIN v. HENRY LISCHEFSKA.[1]

July 17, 1925.

No. 24,609.

**In action for malicious prosecution jury determines facts in dispute and court decides whether facts constituted probable cause.**

In actions for malicious prosecution it is the province of the court to determine whether the established facts constituted probable cause for the prosecution; but it is the province of the jury to determine the facts, if in dispute. Plaintiff's testimony made a question for the jury.

[1]Reported in 204 N. W. 885.

See Malicious Prosecution, 38 C. J. pp. 502, § 193, 503, § 193, 505, § 195.

---

See note in 24 A. L. R. 261. See note in L. R. A. 1915D, 1; 18 R. C. L. p. 58; 3 R. C. L. Supp. p. 783; 4 R. C. L. Supp. p. 1177; 5 R. C. L. Supp. p. 971.

Action in the district court for Brown county for malicious prosecution. The case was tried before Olsen, J., and a jury which returned a verdict in favor of plaintiff. Defendant's motion for judgment notwithstanding the verdict was granted. Plaintiff appealed from the judgment. Reversed.

*T. O. Streissguth,* for appellant.

*Alexander Seifert* and *Albert Hauser,* for respondent.

TAYLOR, C.

This is an action for malicious prosecution in which the plaintiff had a verdict and the court rendered judgment for defendant notwithstanding the verdict. Plaintiff appeals.

Plaintiff was indicted for drawing a check on the First National Bank of Springfield and delivering it to defendant in payment for goods purchased, knowing that he had no funds or credit with the bank for the payment of the check. He was arrested on a bench warrant, and thereafter tried and acquitted. This action followed.

To establish his cause of action, plaintiff must prove that the criminal prosecution was instituted by defendant without probable cause and maliciously. Hanowitz v. G. N. Ry. Co. 122 Minn. 241, 142 N. W. 196; Lammers v. Mason, 123 Minn. 204, 143 N. W. 359; Cox v. Lauritsen, 126 Minn. 128, 147 N. W. 1093. It is firmly settled that the question whether the established facts in a particular case constitute probable cause is for the court and, upon appeal, will be determined by this court by weighing the evidence as if originally presented here. Cox v. Lauritsen, supra; Williams v. The Pullman Co. 129 Minn. 97, 151 N. W. 895, Ann. Cas. 1916E, 374; Eastman v. Leiser Co. 148 Minn. 96, 181 N. W. 109. But it is the province of the jury, in this as well as in other cases, to determine disputed

questions of fact, and the court accepts and adopts their findings of fact, if such findings are reasonably supported by the evidence.

That plaintiff issued the check in question and had no funds in the bank to meet it, is conceded. The statute makes these facts prima facie evidence of an intent to defraud. G. S. 1923, § 10361. The indictment returned by the grand jury is also prima facie evidence of reasonable cause for instituting the prosecution. Casey v. Dorr, 94 Ark. 433, 127 S. W. 708, 140 Am. St. 124, 21 Ann. Cas. 1046, and note; Schott v. Indiana Nat. Life Ins. Co. 160 Ky. 533, 169 N. W. 1023, Ann. Cas. 1916A, 337, and note. That plaintiff was acquitted at the trial is no evidence that the prosecution was instituted without probable cause. Hanowitz v. G. N. Ry. Co. 122 Minn. 241, 142 N. W. 196; also note in 24 A. L. R. 261. The above facts would clearly establish probable cause for the prosecution if nothing further appeared. The question presented is whether plaintiff has overcome the probative force of these facts, and shown affirmatively that defendant had no reasonable ground for believing him guilty of the offense.

Defendant is a merchant at Springfield, and plaintiff operated a rented farm near there. All his property was covered by chattel mortgages. His version of the transaction is, in brief, that in November, 1920, he bought a bill of goods amounting to $17.39; that defendant refused to charge them and wanted a check; that he said he could not give a check, for he had no money in the bank; that defendant said that was all right, he would take a check dated 30 days ahead to give time to get the money; that defendant drew the check and he signed it; that in March, 1922, some 15 months later, he went to defendant's store to buy some wool fat for a neighbor who had requested him to do so and had given him 50 cents to pay for it; that defendant asked him to pay the check, to which he replied that he had no money except the 50 cents given him by the neighbor to pay for the wool fat; that defendant said the check was pretty old and he better renew it; that he did renew it by giving the check now in question; and that he told defendant he had no money and defendant promised to hold the check until he got the

money. This check was dated on the day it was drawn, March 21, 1922.

Defendant's version of the transaction is, in brief, that plaintiff made three purchases of merchandise: One on October 20, 1920, amounting to $5.33; one on November 17, 1920, amounting to $3.98; and one on March 21, 1922, the date of the check, amounting to $8.08; that when plaintiff made this last purchase plaintiff asked if he had a First National Bank check; that he produced one, and asked plaintiff if he could not include the little back account in the check; that plaintiff said all right and made the check for the full amount of $17.39; that this was the only check given by plaintiff; that nothing was said about plaintiff having no funds in the bank or about holding the check; that he presented the check to the bank the next day and payment was refused on the ground of "no funds;" that he immediately notified plaintiff of that fact by a letter, a carbon copy of which is in evidence dated March 22, 1922; that he wrote plaintiff two other letters insisting that plaintiff take care of the check, carbon copies of which are in evidence; that receiving no reply he placed the matter in the hands of his attorney, who also wrote plaintiff, and, receiving no reply and learning that plaintiff had left the farm he had been occupying, advised defendant to present the matter of the check to the grand jury; and that pursuant to this advice and arrangements made by his attorney with the county attorney he appeared and testified before the grand jury, which returned the indictment on which plaintiff was thereafter arrested and tried.

Plaintiff testified that he purchased all the articles for which the check was given at the same time in November, 1920, and gave a check for the amount at that time; that he purchased the wool fat for his neighbor when he gave the check of March 21, 1922, but purchased nothing else; and that when he gave this check the original check was returned to him, but had been lost or destroyed. He also denied receiving any of the letters written him, but admitted receiving what he termed a statement of account, which had also been lost or destroyed.

The neighbor, for whom plaintiff claimed to have bought the wool fat, testified that he never asked plaintiff to buy any wool fat and that such a matter had never been mentioned between them. Defendant produced his account books showing the specific articles purchased by plaintiff on each of the three dates above stated, and testified that the check given him on the date of the last purchase was the only check ever given him by plaintiff. The bank either held or represented the holders of the chattel mortgages on plaintiff's property and there is evidence that plaintiff asked the cashier to advance the money to pay this check which he refused to do, but there is no evidence that plaintiff ever mentioned the check which he claims was given in November, 1920, or that such a check was ever presented to the bank. The check in question was not postdated, and creates a presumption that it was intended to be operative according to its terms.

The trial court held that plaintiff's testimony had been so discredited that, under the doctrine of Summit Mercantile Co. v. Daigle, 146 Minn. 218, 178 N. W. 588, his uncorroborated testimony was not sufficient to overcome the strong prima facie case of probable cause made by the defendant. While plaintiff's version of the transaction seems improbable in view of the other evidence, yet the weight and credit to be given to his testimony was for the jury to determine, and we think the court erred in directing judgment notwithstanding the verdict.

Plaintiff assigns several of the rulings excluding or admitting evidence as error. We find none in which the court exceeded its discretion, and none requiring special mention.

The judgment is reversed but without prejudice to the motion for a new trial.